102 So.2d 147 (1958)
C.W. CHASE, Jr., et al., as Members of and Constituting the Dade County Budget Commission, Appellants,
v.
Faris COWART et al., as Members of and Constituting the Board of County Commissioners of Dade County, Florida, Appellees.
Supreme Court of Florida.
April 18, 1958.
*148 Ward & Ward, Miami, for appellants.
Darrey A. Davis and Sibley, Grusmark, Barkdull & King, Miami Beach, for appellees.
Richard W. Ervin, Atty. Gen., and Howard S. Bailey, Asst. Atty. Gen., for intervenor.
Thomas H. Anderson, Edward L. Semple and George S. Okell, Sr., Miami, amici curiae.
O'CONNELL, Justice.
Chase et al., as and constituting the Dade County Budget Commission, filed a complaint for declaratory decree against Cowart et al., as and constituting the Board of County Commissioners of Dade County, wherein the chancellor was asked to determine:
(1) whether the Budget Commission had been abolished by the home rule charter adopted by the people of Dade County;
(2) if held to be abolished, what if any duties did the Budget Commission have as to other public bodies not covered in the home rule charter; and
(3) if not held to be abolished, what were its duties and obligations with respect to conflicting duties fixed on it by law, as against like duties imposed by the home rule charter on the County Commissioners.
In granting a motion to dismiss the complaint filed by the County Commissioners, *149 the chancellor determined that although it was doubtful that the provision of the home rule charter abolishing the Budget Commission was authorized (under the Home Rule Amendment to the Florida Constitution, Article VIII, Section 11, adopted November 6, 1956, F.S.A.), nevertheless the passage of Chapter 57-912, by the 1957 Session of the Legislature "compels the conclusion that the Dade County Budget Commission has been abolished legally at least so far as its functions over the metropolitan government of Dade County are concerned." The chancellor further said that as to other public bodies not parties to the proceedings "* * * the court finds no reason to hold that the duties of the Dade County Budget Commission as to any public official or public body not covered by the metropolitan government are impaired."
A petition for rehearing questioning the validity and effect of said Chapter 57-912 was filed and by stipulation of the parties was treated as an amendment to the complaint with the motion to dismiss being considered as directed to the complaint as so amended.
The Attorney General of the State of Florida, by stipulation, was made a party defendant. A memorandum or brief was filed in this Court on behalf of Dade County League of Municipalities and Amicus Curiae, Thomas H. Anderson, George S. Okell, Sr., and Edward L. Semple. It has been considered along with the briefs and arguments of the parties.
We will first consider the validity of Chapter 57-912, supra, for should we find it to have the effect given it by the chancellor such will be dispositive of this cause.
The Legislature by Chapter 31420, Laws of 1956, provided for the appointment of the Metropolitan Charter Board. The members of this body were appointed and prepared a home rule charter which was submitted to and approved by the electors of Dade County on May 21, 1957. Contained in the charter, as approved, was the following specific provision: "The Budget Commission created by Chapter 21874, Laws of Fla., 1943, is hereby abolished and Chapter 21874 shall no longer be of any effect." Thereafter the Legislature enacted Chapter 57-912, Laws of 1957.
Chapter 57-912 purported to ratify, validate and confirm, (1) Chapter 31420, Laws of 1956, above mentioned; (2) the actions of the Metropolitan Charter Board including any charters drawn by the board; and (3) all elections held pursuant to said Chapter 31420.
It should be noted here that no attack was made before the chancellor and none is made here on the validity of Chapter 31420, supra, or on the organization or actions of the Charter Board in preparing the home rule charter. Nor is the method by which the charter was submitted to the electors of Dade County, or their ratification thereof, questioned in any way.
Subsection (3), Section 11, gave the Legislature the power and duty to create the Metropolitan Charter Board and to provide the method by which the home rule charter as prepared by the Charter Board, would be presented to the electors of Dade County. Having the power to act initially in these matters, the Legislature then had the power to validate and confirm Chapter 31420, Laws of 1956, the organization of the Charter Board and to confirm the actions of the Charter Board in submitting the home rule charter to the voters.
But this is the extent of the power given the Legislature regarding the adoption of the home rule charter for it is clear that the provisions of subsection (1) and (3) placed the power to adopt, amend, or revise the home rule charter in the electors of Dade County and in them alone. It is fundamental that the Legislature could not ratify nor confirm that which it initially had no power to control or perform.
It is true that subsections (5), (6) and (9) of Section 11 retain in the Legislature *150 the power to enact general laws, which as provided in those sections, shall be effective in Dade County. However, Chapter 57-912 is obviously a special act applicable only to Dade County and seeks only to validate and confirm the matters set forth above.
When the Legislature enacted Chapter 31420, Laws of 1956, creating the metropolitan charter and providing the method of presenting the home rule charter to the voters of Dade County, and more specifically when the electors of Dade County adopted the home rule charter on May 21, 1957, the authority of the Legislature in affairs of local government in Dade County ceased to exist. Thereafter, the Legislature may lawfully exercise this power only through passage of general acts applicable to Dade County and any other one or more counties, or a municipality in Dade County and any other one or more municipalities in the State.
Therefore, we hold that Chapter 57-912, supra, is of no force or effect insofar as it attempts to ratify, affirm and validate the home rule charter.
The chancellor in his final decree expressed doubt that Section 11 gave the electors of Dade County the power to abolish the Budget Commission by the subject provision in the home rule charter, but having determined that the provisions of Chapter 57-912, supra, had the effect of validating the abolition thereof he found it unnecessary to answer this question.
In its brief on petition for rehearing, the Budget Commission protests that it raised only the issue of the validity of Chapter 57-912, supra, and that therefore we should not go beyond that question in deciding this case. It objects to the fact that in our previous opinion herein, as we do in this one, we affirmed the chancellor, in part, by holding that the Budget Commission was abolished, but did so on a different ground than that relied on by the chancellor.
This is easily explained. Decrees and judgments in cases which come to an appellate court for review are presumed to be correct and free from error. We are required to uphold the lower court if valid grounds exist therefor. While the grounds or reasoning used by the trial court or chancellor are frequently helpful to an appellate court on review, they are not controlling. The decision of the appellate court must be made, not on the basis of whether the trial court or chancellor traveled the proper route, used proper reasoning, or laid his conclusion on proper grounds, but rather on whether his conclusion is correct or incorrect. We have followed these principles in deciding this case.
Further, we point out that the appellees, in their reply brief, urged the very question on which we decided this case herein.
We consider the basic question in this cause to be whether or not the electors of Dade County had given to them in Section 11 the authority and power to abolish the Dade County Budget Commission. We are of the opinion that they had the authority to do so under the provisions of subsection (1) (c), Section 11, and that by adoption of the home rule charter they have done so.
In its main brief the Budget Commission contends that since it was created under an act of general application, affecting more than one county, it cannot be abolished by the adoption of the home rule charter. In support of this position in its petition for rehearing it argues that subsections (5), (6), (7), and (9), of Section 11 are limitations of the home rule power and when construed with subsection (1)(c) prohibit the electors of Dade County from abolishing any board, authority or governmental unit created by any general act applicable to Dade, and any other one or more counties.
The Constitutional Amendment authorizing home rule for Dade County, Article VIII, Section 11, Fla. Const., is composed of nine (9) subsections. In the Senate Joint Resolution which proposed the amendment these subsections there were designated *151 alphabetically (a) through (i). In Florida Statutes, 1957, and Florida Statutes Annotated the designation has been changed so that they are now designated by numerals (1) through (9).
In the Joint Senate Resolution the first subsection, i.e. subsection (a), was further divided into nine (9) subsections designated by small Roman numerals (i) through (ix). In the publications of the statutes above mentioned the designation of the subsections has been changed so that they are now designated alphabetically (a) through (i). This explanation will be helpful to the reader in comparing this opinion with that in Gray v. Golden, Fla. 1956, 89 So.2d 785, where the subsections are referred to as designated in the Senate Joint Resolution.
Subsection (1) in each of its nine subsections grants certain powers to the electors of Dade County. Subsections (5), (6), (7), and (9) clearly prescribe limitations on the power of home rule. As we said in Gray v. Golden, supra, at page 790:
"* * * These paragraphs emphasize the supremacy of the legislature in lawmaking power, insure the paramount authority of the state, the jurisdiction of state agencies, bureaus and commissions in Dade County and withal declare the purpose of the proposed amendment is to grant home rule in local affairs only and to preserve the supremacy of the Constitution and general laws relating to counties, except as expressly set forth in the proposed amendment. * * *" [Emphasis added.]
The pertinent portion of subsection (1) (c), which we hold furnishes the authority for the abolition of the Budget Commission, provides that the electors of Dade County are granted the power to adopt a home rule charter, which charter:
"(c) May * * * abolish * * * all * * * boards, or other governmental units whose jurisdiction lies wholly within Dade County, whether such governmental units are created by the Constitution or the Legislature or otherwise, except the Dade County Board of County Commissioners * * and the Board of Public Instruction of Dade County."
The foregoing subsection clearly authorizes the abolition of any board whose jurisdiction lies wholly within Dade County, whether created by the Constitution or legislative act. We understand this to mean that it makes no difference whether the board be created by a special or a general act, based on population or otherwise.
The Budget Commission urges that we must read this authority to abolish in light of the limitations contained in subsections (5), (6), (7), and (9) and we will do so, but first we must determine whether The Dade County Budget Commission is a "board" whose jurisdiction lies wholly within Dade County.
On this point, the chancellor in the final decree found that "* * * the jurisdiction of the Budget Commission lies wholly within Dade County * * *."
A careful reading of Chapter 21874, supra, which act created the Budget Commission, conclusively shows that the authority of the Budget Commission is limited to fiscal affairs of county boards and county officers of Dade County. The Budget Commission has called our attention to the fact that, while its ultimate duties and powers are confined to Dade County and its government, the Budget Commission in performance of its duties assists various state officers and boards such as the Comptroller, the State Auditor, and the State Board of Education. No doubt this is true, but the jurisdiction of the Budget Commission, i.e. its authority or power to act, is restricted to subjects, matters or objects lying wholly within Dade County. This fact is determinative of the question.
We point out that the Budget Commission does not contend that it is a state agency, *152 bureau or commission such as mentioned in subsection (7), Section 11.
We have thus arrived at the conclusion that the Budget Commission is a board "whose jurisdiction lies wholly within Dade County", and that subject to the limitation set forth in subsections (5), (6), (7), and (9), Section 11, the electors of Dade County had the power to abolish the Budget Commission by adoption of the home rule charter.
We then turn our attention to subsections (5), (6), (7), and (9), Section 11, which subsections contain limitations on the home rule power.
Subsection (6) provides in effect that the Legislature shall continue to have the power to enact general laws relating to county or municipal affairs, applicable to Dade and any other one or more counties, or to any municipality in Dade County, and any other one or more municipalities in the State. It provides that, when adopted, such laws shall supersede any portion of the home rule charter or ordinances enacted pursuant thereto in conflict therewith, and any provision of any municipal charter in conflict therewith. This subsection is prospective in effect. The Budget Commission does not contend that the Legislature has, since the adoption of the home rule charter, enacted any general law which would supersede that portion of the home rule charter which abolished the Budget Commission. This subsection is therefore not applicable to this cause.
Subsection (7) provides that the power and jurisdiction of the Railroad and Public Utilities Commission and of any other state agency, bureau or commission now or hereafter provided for by the Constitution or general law shall remain undisturbed in Dade County. The Budget Commission is not a state commission therefore this subsection is not applicable to this cause.
Subsection (9) first declares the intent of Section 11 to be to give the people of Dade County home rule in local affairs. Second, it provides that the provisions of the Fla. Const. and the provisions of all general laws, relating to Dade County and any other one or more counties, enacted pursuant thereto, i.e. to the Constitution, by the Legislature shall be the supreme law in Dade County, "except as expressly provided herein", i.e. in Section 11. Subsection (5) contains a similar provision retaining in the Legislature the power to enact general laws relating to Dade County and any one or more counties. This provision of both sections is prospective, as is the provision contained in subsection (6), above discussed.
Subsection (5), however, contains the following provision which is specific and relates directly to the question now before us, to-wit:
"* * * and the home rule charter provided for herein shall not conflict with any provision of this Constitution nor of any applicable general laws now applying to Dade County and any other one or more counties of the State of Florida except as expressly authorized herein." [Emphasis added.]
Subsection (9), likewise, after stating that the Constitution and general laws are to be supreme in Dade County, modifies this by the words "except as expressly provided herein."
Assuming, but not deciding, Chapter 21874, supra, to be a general law, applicable to Dade and at least one other county in the State, the above quoted provision of subsection (5) and possibly the provision of subsection (9) would cause this law to remain in effect unless the electors of Dade County are given the express authority in the other subsections of Section 11 to adopt a home rule charter with provisions in conflict with said law.
Subsection (1)(c), copied earlier herein, is clearly an express grant of power which authorizes the voters of Dade County to adopt a charter, the provisions of which may abolish any board or governmental *153 unit, whose jurisdiction lies wholly in Dade County, whether created by the Constitution or by the Legislature or otherwise. We think it crystal clear that the words "except as expressly authorized" or "provided" as found in subsections (5) and (9) relates directly to the specific grants of power contained in the various sub-subsections of subsection (1).
Therefore the limitation in subsections (5) and (9), and more specifically that portion of subsection (5) last above copied, do not prohibit the abolishing of the Budget Board because of a conflict between the charter provision abolishing it and Chapter 21874, supra, which we have assumed to be a general law, for the reason that the power to do so comes within the exception to the limitations contained in said subsections.
In its brief on petition for rehearing, the Budget Commission argues that subsection (1)(c) should be construed together with the provisions of subsections (5), (6), (7), and (9) to mean that the electors of Dade County could by its home rule charter abolish only boards or governmental units which have been created by special act of the Legislature, or by a general population act which in the first instance was applicable to Dade County and no other county.
To do so would ignore the plain wording of subsection (1)(c) which says that such boards having jurisdiction only in Dade County may be abolished "* * * whether * * * created by the Constitution or the Legislature or otherwise * * *." Such a construction would also mean that, in order to be consistent, we would have to hold that the electors of Dade County could not abolish a board created by the Constitution which would be in direct defiance of the subject provision which says they may do so.
Such a construction would be in direct conflict with our decision in the case of Dade County v. Kelly, Fla. 1958, 99 So.2d 856, 857, in which we held that the electors of Dade County could under the grant of power contained in subsection (1)(f), Section 11, "provide a method for abolishing" the office of sheriff. Such a construction would also be in conflict with our decision in Gray v. Golden, supra, as quoted and relied upon in the Kelly case, supra.
We feel it necessary to point out that the provisions of subsection (1)(c) provide only for a change in the structure or form of the government of Dade County through the abolishing of the governmental units mentioned therein. This subsection does not, nor does any other portion of Section 11, empower the electors of Dade County by adoption of the home rule charter, or the Board of County Commissioners acting thereunder, to relieve the Metropolitan government of Dade County from performing any functions or duties imposed on the government, people or property in Dade County and on the government or people in any other one or more counties in the State, either by general act of the Legislature or the Constitution. Nor does it relieve the government, people or property of Dade County from the regulation or restriction, nor take from the government, people or property in Dade County any of the benefits or protection offered under such a general act, or under the Constitution. To make the distinction complete we should say that we feel that the electors of Dade County by adoption of the home rule charter and the Board of County Commissioners acting thereunder have the power to not only abolish a board or governmental unit created by special act of the Legislature, but also to abolish, modify, supersede or otherwise change the duties, functions, benefits, regulatory or restrictive effect of such an act.
It is in the manner described in the foregoing paragraph that the supremacy of general acts of the Legislature and provisions of the Constitution in effect at the time of the adoption of the home rule charter continue to be the supreme law in Dade County, while at the same time allowing the people of Dade County to change *154 the structure of their government to best conform to their local needs.
We have herein assumed Chapter 21874, supra, to be a general act but we have not decided it to be such for it was not and is not necessary to our decision herein to do so. The conclusion we reach as to the abolishment of the Budget Commission would be the same whether it were a general act, a special act, or whether the Budget Commission had been created by the Constitution
We point out specifically that we have not been called upon to decide, nor do we decide whether or not it will be necessary for metropolitan government in Dade County to provide for the continued performance of any of the duties or functions of the Budget Commission as prescribed by the laws affecting it.
We feel it necessary also to consider the effect of the abolishment of the Budget Commission as it affects "other public bodies", county boards, and officers of Dade County who were not parties to this cause. In the decree appealed from the chancellor held that "* * * the duties of the Dade County Budget Commission as to any public official or public body not covered by the metropolitan charter * *" were not impaired.
The word abolish in its usual sense means "to do away with wholly, to annul, to make void." See Webster's New International Dictionary, 2d Ed. Having been abolished, as we have held it was, the Budget Commission had no existence after the effective date of its abolishment and could not thereafter exercise any of the powers nor perform any of the duties assigned to it under the laws affecting it.
The sum of this opinion is that we have upheld the chancellor in his finding that the Budget Commission is abolished, but we have reversed that part of the decree which holds that the duties of the Budget Commission as to public officers and bodies not covered by the home rule charter are not impaired.
Our former opinion in this cause is withdrawn and this opinion is substituted in lieu thereof. The petition for rehearing as addressed to this opinion is denied.
The decree appealed from is affirmed in part and reversed in part.
TERRELL, C.J., HOBSON and THORNAL, JJ., and WIGGINTON, District Judge, concur.