**MIAMI SHORES VILLAGE v. COUNTY COMMISSIONERS.**
**No. 58C 1462.**

Circuit Court, Dade County.

June 27, 1958.

Anderson & Nadeau and Edward L. Semple, all of Miami, for plaintiff.

Darrey A. Davis, County Attorney, for defendants.

PAT CANNON, Circuit Judge.

This cause came on for trial and final hearing upon plaintiff's complaint for declaratory decree, the defendants' answer and cross-complaint, and plaintiff's answer to the cross-complaint. The court has considered the pleadings and the evidentiary exhibits, and has heard and considered arguments of counsel. The parties stipulated and agreed that no issues of fact are involved, and no testimony was adduced.

The plaintiff, Miami Shores Village, a municipality in Dade County, instituted this suit against the board of county commissioners of Dade County seeking a determination and delineation of the respective powers and functions of county government and the various city governments in Dade County, under the Dade County Home Rule Amendment to the Florida constitution and the Home Rule Charter of government for Dade County.

Plaintiff alleges it is in doubt as to its rights and duties under the Dade County Home Rule Amendment to the Florida constitution and under the Home Rule Charter, particularly in regard to—

*First.* Whether by virtue of section 11 (vii) of said constitutional amendment, the charter of Dade County may vest in the board of county commissioners the right to curtail the exercise by the respective municipalities of said county of the charter powers granted to them by their respective charters and particularly whether sections 5.01 and 5.02 and 8.04 of the said charter are in derogation of said amendment (vii), and if so, in what respect and if not, then to what extent may the municipalities exercise their aforesaid functions and powers?

*Second.* Whether the provisions of said charter are in themselves repugnant and inconsistent with each other insofar as they seek to limit and fetter the exercise by the several municipalities of the powers granted to them by the respective charters, and particularly with respect to section 1.01 (4) and 1.01 (18), and whether or not the limitations of section 1.01 (18) are applicable to all of the powers and functions which the aforesaid charter seeks to vest in the board of county commissioners with respect to municipal functions and duties?

Plaintiff further alleges that determination of the foregoing questions is essential to the orderly administration of the respective county and city governments existing in Dade County under and by virtue of the constitutional amendment and the charters under which the several municipalities exist, and that the answers to the questions propounded will necessarily provide for the orderly administration of government in Dade County. Plaintiff charges that the Home Rule Charter constitutes a threat to the continued exercise of the powers, duties and functions confided to plaintiff by its municipal charter (chapter 26036, Special Acts of 1949, Laws of Florida).

Article VIII, section 11 (vii) of the Florida constitution (which is designated as Section 11 (1) (g) in Florida Statutes 1957 and Florida Statutes Annotated), referred to in the first question, provides that the Home Rule Charter — "Shall provide a method by which each municipal corporation shall have the power to make, amend or repeal its own charter. Upon adoption of this home rule charter by the electors this method shall be exclusive and the Legislature shall have no power to amend or repeal the charter of any municipal corporation in Dade County."

Plaintiff challenges the validity of section 1.01A (4), 1.01 A (18), 5.01, 5.02, and 8.04 of the Home Rule Charter upon the ground that the charter provisions are either in derogation of, and in conflict with, the constitutional amendment, particularly section 11 (1) (g), above quoted; or that the charter provisions are repugnant and inconsistent with each other. Plaintiff urges that the county commission, in the exercise of its powers relating to municipalities, is limited and restricted to setting minimum standards in accordance with section 1.01 A (18) of the charter.

The charter provisions under consideration vest in the county commission, as the legislative and governing body of Dade County, the power and authority to —

*Section* 1.01 A (4).

Provide central records, training, and communications for fire and police protection; provide traffic control and central crime investigation;

provide fire stations, jails, and related facilities; and subject to Section 1.01 A (18) provide a uniform system for fire and police protection.

*Section 1.01 A (18).*

Set reasonable minimum standards for all governmental units in the county for the performance of any service or function. The standards shall not be discriminatory as between similar areas. If a governmental unit fails to comply with such standards, and does not correct such failure after reasonable notice by the Board, then the Board may take over and perform, regulate, or grant franchises to operate any such service. The Board may also take over and operate, or grant franchises to operate any municipal service if:

(a) In an election called by the Board of County Commissioners within the municipality a majority of those voting vote in favor of turning the service over to the county; or

(b) The governing body of the municipality requests the county to take over the service by a two-thirds vote of its members, or by referendum.

*Section 5.01. Continuance of Municipalities.*

The municipalities in the county shall remain in existence so long as their electors desire. No municipality in the county shall be abolished without approval of a majority of its electors voting in an election called for that purpose. The right of self determination in local affairs is reserved and preserved to the municipalities except as otherwise provided in this Charter.

*Section 5.02. Municipal Powers.*

Each municipality shall have the authority to exercise all powers relating to its local affairs not inconsistent with this Charter. Each municipality may provide for higher standards of zoning, service, and regulation than those provided by the Board of County Commissioners in order that its individual character and standards may be preserved for its citizens.

## Section 8.04 of the Home Rule Charter provides as follows:

*Section 8.04 Supremacy Clause*

A. This Charter and the ordinances adopted hereunder shall in cases of conflict supersede all municipal charters and ordinances, except as herein provided, and where authorized by the Constitution, shall in cases of conflict supersede all special and general laws of the state.

B. All other special and general laws and county ordinances and rules and regulations not inconsistent with this Charter shall continue in effect until they are superseded by ordinance adopted by the Board pursuant to this Charter and the Constitution.

The defendants, by cross-complaint for declaratory decree, seek a declaration of the rights, status and relationship of the Metropolitan Court of Dade County in respect to the trial of traffic offenses committed under the Metropolitan Traffic Ordinance adopted by

the county commission, and determination of whether or not the Metropolitan Traffic Ordinance supersedes or repeals the Miami Shores Village Traffic Ordinance, and whether the county commission has the power and authority under the Dade County Home Rule Amendment and Home Rule Charter to enact an ordinance regulating traffic on a county-wide basis governing traffic uniformly within both the incorporated and unincorporated areas of Dade County. Defendants pray that, if this court declares that the Metropolitan Traffic Ordinance (ordinance no. 57-12) adopted under and pursuant to the Home Rule Charter supersedes the Miami Shores Village Traffic Ordinance, then and in such event Miami Shores Village may be permanently enjoined and restrained from further exercising powers contrary to the charter and metropolitan ordinances enacted thereunder.

As a basis for the relief sought by their cross-complaint, the defendants allege that the Dade County Home Rule Amendment to the Constitution grants the electors of Dade County power to adopt a home rule charter of government for Dade County which —

(b) May grant full power and authority to the Board of County Commissioners of Dade County to pass ordinances relating to the affairs, property and government of Dade County and provide suitable penalties for the violation thereof; to levy and collect such taxes as may be authorized by general law and no other taxes, and do everything necessary to carry on a central metropolitan government in Dade County.

\*     \*     \*

(d) May provide a method by which any and all of the functions or powers of any municipal corporation or other governmental unit in Dade County may be transferred to the Board of County Commissioners of Dade County.

\*     \*     \*

(f) . . . . such charter may create new courts and judges and clerks thereof with jurisdiction to try all offenses against ordinances passed by the Board of County Commissioners of Dade County and none of the other courts provided for by this constitution or by general law shall have original jurisdiction to try such offenses, . . . .

Defendants point out that the Home Rule Charter adopted by the electors of Dade County expressly provides—

*Section* 1.01. *Powers.*

A. The Board of County Commissioners shall be the legislative and the governing body of the county and shall have the power to carry on a central metropolitan government. This power shall include but shall not be restricted to the power to:

1. Provide and regulate arterial, toll, and other roads, bridges, tunnels, and related facilities; eliminate grade crossings; provide and regulate parking facilities; and *develop and enforce master plans for the control of traffic and parking.*

*Section 6.01. Metropolitan Court Established.*

A. A court is hereby established, the name of which shall be the Metropolitan Court. There shall be as many judges of this Court as the Board shall deem necessary to administer promptly and expeditiously the business of the ·Court.

*Section 6.02. Jurisdiction and Procedure.*

A. The Court shall have jurisdiction to try all cases arising under ordinances adopted by the Board.

E. All prosecutions for violations of any ordinance punishable by fine or imprisonment shall be conducted by the State Attorney of this county, if he be willing, and, if not, by the department of law. The Board may by ordinance provide for a public defender.

The board of county commissioners, under and pursuant to the provisions of the charter, adopted ordinance no. 57-12, known as "The Traffic Ordinance of Dade County, Florida", providing as follows—

26.01 It is provided that this ordinance shall pertain to all violations hereof within Dade County, Florida, and supersedes and nullifies any and all Municipal ordinances or codes and any and all County ordinances or codes relative to the regulation and enforcement of traffic.

26.02. The violation of any provisions hereof shall be triable in the Metropolitan Court, which shall have exclusive original jurisdiction thereof.

26.06 This ordinance is applicable in all the unincorporated and incorporated areas of Dade County, Florida.

The county commission also enacted ordinance no. 57-13, implementing the charter provisions establishing the metropolitan court, which ordinance provides — "Section 3.02. JURISDICTION. The Court shall have exclusive original jurisdiction to try all cases arising under ordinances adopted by the commission."

Defendants allege in their cross-complaint that, notwithstanding the above quoted provisions and requirements of the constitutional amendment, the charter, and the metropolitan ordinances enacted thereunder, Miami Shores Village continues to maintain and operate a municipal traffic court and tries all persons charged with violations of the municipal traffic ordinance upon the theory that its municipal traffic ordinance is supreme over the Metropolitan Traffic Ordinance in Miami Shores Village, and that the Metropolitan Traffic Ordinance has no force. and effect in Miami Shores Village.

The contentions of Miami Shores Village and of the county commission have been summarized because the recitation thereof tends to impel the conclusion that the real controversy arises out

of the conflicting constructions and interpretations placed by the litigants upon the controlling provisions of the Dade County Home Rule Amendment to the Florida constitution.

Plaintiff's position is predicated upon a premise that the declaration of intent expressed in section 11 (9) of the constitutional amendment by the following verbiage — "It is declared to be the intent of the Legislature and of the electors of the State of Florida to provide by this section home rule for the people of Dade County in local affairs . . ." means that each municipality in Dade County should have full, absolute and complete power of self determination in respect to the affairs, property and government within its territorial area; that in the exercise of the powers and functions granted by its municipal charter, the municipal governing body is vested with exclusive power, subject only to the constitution and general laws of Florida, and beyond any legislative controls of the county government. Plaintiff points to the provisions of the constitutional amendment which guarantee to each municipality the exclusive power to make, amend or repeal its own charter (section 11 (1) (g) above quoted).

On the contrary, the county contends that the language of the constitutional amendment declaring the intent and purpose thereof to be to provide home rule for the people of Dade County in local affairs, when construed in conjunction with the other provisions of the constitutional amendment, means that, although municipalities are indeed vested with rights of self determination in their local affairs, yet in the exercise of this power the municipalities are subject to the superior power of the county government to enact county laws applicable throughout the entire county. This is so, says the county, because the county commission, as the governing and legislative body of the county, is charged with the duty, and vested with the authority, "to do everything necessary to carry on a central metropolitan government in Dade County"; and when a municipal ordinance enacted by the governing body of any of the several municipalities conflicts with a county ordinance or law, then the county-wide law must prevail; otherwise there could never be a central metropolitan government in Dade County. In the exercise of this governmental power, the county commission is subject to the provisions of the constitution, the charter, and general laws of Florida. Defendants, in support of their contention, cite the following provisions of the constitutional amendment —

Section 11. *Dade County Home Rule Charter.*

(1) The electors of Dade County, Florida, are granted power to adopt, revise, and amend from time to time a home rule charter of government

for Dade County, Florida, under which the Board of County Commissioners of Dade County shall be the governing body. This charter:

\* \* \*

(b) May grant full power and authority to the Board of County Commissioners of Dade County to pass ordinances relating to the affairs, property and government of Dade County and provide suitable penalties for the violation thereof; . . . *and do everything necessary to carry on a central metropolitan government in Dade County.*

(c) May change the boundaries of, merge, consolidate, and abolish and may provide a method for changing the boundaries of, merging, consolidating and abolishing from time to time all municipal corporations, . . .

(d) May provide a method by which any and all of the functions or powers of any municipal corporation . . . in Dade County may be transferred to the Board of County Commissioners of Dade County.

(e) May provide a method for establishing new municipal corporations, . . . in Dade County from time to time and provide for their government and prescribe their jurisdiction and powers.

The Supreme Court has declared that the object of constitutional construction always is to ascertain and effectuate the intention and purpose of the people in adopting the constitutional provisions under consideration. Such purpose and intent must be found in those implications and intendments which clearly flow from the express mandates of the constitutional provisions when considered in the light of circumstances and historical events leading up to the adoption thereof, from all of which the purpose and intent of the people in adopting it must be gleaned. See Amos v. Mathews, 99 Fla. 1, 126 So. 308. Application of such accepted principles of constitutional construction to the controlling provisions of the constitutional amendment here under consideration produces the inescapable conclusion that it was the express intendment of the electors of the state of Florida to provide home rule for the people of Dade County in local affairs. This is so, because such intent and purpose is expressly declared by the language of subsection (9) of the constitutional amendment. "Home Rule" in local affairs necessarily means the right to govern by the enactment of laws relating to the affairs, property and government of Dade County. The orderly administration of government contemplates the delegation by the people of their legislative powers to their elected representatives. The parties in this litigation are in conflict as to whether the legislative and governing powers vested in the municipalities or the legislative and governing powers vested in the county government are paramount, insofar as such powers relate to the exercise of governmental functions within the corporate boundaries of the several municipalities in cases of conflict.

Section 2 of the Declaration of Rights of the Florida constitution provides — "All political power is inherent in the people. Government is instituted for the protection, security and benefit of the citizens, and they have the right to alter or amend the same whenever the public good may require it . . ." The basic principle of our constitutional system of government is that all political power is inherent in the people. This inherent power is exercised by the people under a constitution adopted by them, wherein they provide for the exercise of certain of these inherent powers by their elected representatives. The constitution restrains the people in the exercise of their inherent rights and inherent powers which they have delegated to their elected representatives. See State ex. rel. Ayres v. Gray, 69 So. 2d 187. By adoption of the Florida constitution, the people delegated all their inherent legislative powers to the state legislature. Article III, section 1, of the constitution provides — "The legislative authority of this state shall be vested in a Senate and House of Representatives." Under our constitutional system, the people, having delegated to the legislature all their inherent legislative power, cannot take back unto themselves such power, except by amending the constitutional provisions under which they divested themselves of such inherent political power.

When the people of Florida adopted the Dade County Home Rule Amendment to the Florida constitution, they withdrew from the state legislature the power to enact any laws relating solely to the affairs, property and government of Dade County.

As stated by the Supreme Court in Chase v. Cowart, 102 So. 2d 147 at page 150 — "When the Legislature enacted Chapter 31420, Laws of 1956, creating the metropolitan charter [board] and providing the method of presenting the home rule charter to the voters of Dade County, and more specifically when the electors of Dade County adopted the home rule charter on May 21, 1957, the authority of the Legislature in affairs of local government in Dade County ceased to exist. Thereafter, the Legislature may lawfully exercise this power only through passage of general acts applicable to Dade County and any other one or more counties, or a municipality in Dade County and any one or more municipalities in the state."

Under the express provisions of the constitutional amendment, this legislative authority to enact laws relating to local government in Dade County was withdrawn from the state legislature and vested in the people of Dade County. The electors of Dade County, by adoption of the Home Rule Charter, in turn delegated the legislative authority relating to the affairs, property and govern-

ment of Dade County to their elected representatives, namely, the board of county commissioners of Dade County. The charter provides (under the authority of the constitutional amendment) that the board of county commissioners shall be the legislative and the governing body of the county and shall have the power to carry on a *central metropolitan government*. Section 1.01 of the charter enumerated powers given to and vested in the county commission, and provides —

> B. No enumeration of powers in this charter shall be deemed exclusive or restrictive and the foregoing powers shall be deemed to include all implied powers necessary and proper to carrying out such powers. All these powers may be exercised in the *incorporated and unincorporated* areas, subject to the procedures herein provided in certain cases relating to municipalities.

One of the legislative powers vested in the state legislature prior to adoption of home rule in Dade County was the plenary power of the legislature over all municipalities in Florida. The legislature had full power and authority to establish, to abolish, to provide for the government of all municipalities, and to prescribe their jurisdiction and powers, and to alter or amend the same at any time. See article VIII, section 8, of the constitution; North Shore Bank v. Town of Surfside, 72 So. 2d 659. This plenary power of the legislature over municipalities in Dade County ceased and was withdrawn upon adoption of the Home Rule Charter on May 21, 1957.

Pursuant to the provisions of section 11 (1) (g) of the constitutional amendment, the charter vested in each municipality in Dade County the right to adopt, amend or revoke its own municipal charter, and provided that no municipality in Dade County shall be abolished without approval of a majority of its electors. The charter further provided — "The right of self determination in local affairs is reserved and preserved to the municipalities *except as otherwise provided in this charter.*" * * * "Each municipality shall have the authority to exercise all powers relating to its local affairs *not inconsistent with this charter.*" Each municipality was given the right to provide for *higher* standards of zoning, service, and regulation than those provided by the board of county commissioners.

It would seem abundantly plain, therefore, that it was the intent and purpose to vest in the county commission, as the legislative and governing body of Dade County, all legislative power relating to the affairs, property and government of Dade County as a whole, except as to the express powers reserved to the municipalities. As in our national government the several states have all govern-

mental powers except those expressly reserved to the Federal government; just so in our local government, all powers relating to local affairs were reserved in our county government, except those powers expressly vested in municipalities. This conclusion is sustained by the express provisions contained in section 8.04 of the charter, entitled "Supremacy Clause", and hereinabove set forth in full.

The system of local government in Dade County has been termed by experts in political science as the "federated plan" of metropolitan government. This concept of local government recognizes the fact that virtually all activities of local government are interrelated, and contemplates a division of governmental functions between a central metropolitan government and the existing municipalities within the territorial area, and is designed to provide a method for accomplishment of community problems by means of concerted cooperation between the two levels of local government. This type of metropolitan government adopted for Dade County allocated to the municipalities specific rights of self determination and home rule in municipal affairs, and reserved to the county government the power to pass ordinances or county-wide laws relating to the affairs, property and government throughout the county, and all other powers necessary to carry on a central metropolitan government in the territorial area of Dade County. It recognizes the most vital single problem facing Dade County — that is, the urgent need for the establishment of an area-wide framework for effective local government.

This court will take judicial notice that there are 26 municipalities in Dade County. Each municipality exists and exercises the functions, duties and powers enumerated in their several municipal charters. Each municipal charter is a special law enacted by the state legislature, and the several charters vary to some extent in the scope and limitation of the powers vested in each municipality. The municipalities vary from thickly populated urban centers such as Miami — and to a lesser extent, Hialeah, Miami Beach, Coral Gables and Miami Shores — to municipalities whose total population is less than 70 inhabitants. If it were to be determined that each of these 26 municipalities is vested with supreme power to exercise all the functions enumerated in its charter (particularly when each municipality may amend its charter any way it deems desirable), and that any county-wide ordinance which conflicts with any municipal law would be superseded by such municipal law, any semblance of "central metropolitan government" in Dade County would obviously be impossible, or, at least, highly improbable. The rules of constitutional construction impel a more reasonable and logical conclusion — that expressed in the charter — in

cases of conflict, the charter and county ordinances lawfully adopted thereunder shall supersede all municipal charters and ordinances, except as to those powers expressly allocated by the charter to municipalities. The charter, in laymen's language, might aptly be termed as the "constitution" of Dade County. The charter is required to conform to the constitutional amendment. Any provisions of the charter which transcend the constitutional amendment must be stricken. All ordinances enacted by the county commission must conform to the requirements and limitations of the constitutional amendment, the charter, and to the general laws of Florida. If such ordinances or county laws do not transcend, conflict with, or infringe upon, any provisions of the constitutional amendment, the charter, or the general laws, they are valid and supersede all conflicting or inconsistent municipal charters and municipal laws.

The court is convinced from a careful consideration of all the provisions of the Dade County Home Rule Amendment to the Florida constitution, and from a study of the cases decided by the Supreme Court of Florida relating to the constitutional amendment and Home Rule Charter namely, Gray v. Golden, 89 So. 2d 785; Dade County v. Kelly, 99 So. 2d 856; and Chase v. Cowart, 102 So. 2d 147, that the county commission, as the governing and legislative body of Dade County, is vested with full power and authority to enact ordinances of county-wide application relating to the affairs, property and government of the entire county, subject only to the limitations imposed upon such governmental power by the Florida constitution, the Home Rule Charter, and the general laws of Florida. The power granted to each municipality in Dade County to make, amend or repeal its own charter, and to exercise all rights of self determination in its local or municipal affairs, is subordinate and subject to ordinances enacted by the county commission under and in accordance with the provisions of the Home Rule Charter. Each of the 26 municipalities in Dade County is devoid of any power or authority to enact municipal ordinances, resolutions or laws, or to make or amend its municipal charter so as to become in conflict with any lawfully enacted county ordinance; and if an existing municipal charter or any municipal ordinances or laws adopted thereunder conflict with provisions of any county ordinances, then the county ordinances prevail and are controlling, and the municipal laws, insofar as they are in conflict, are invalid and of no lawful force and effect.

*In consideration of the foregoing* — The court finds and declares that the Home Rule Charter of government for Dade County adopted on May 21, 1957, by the electors of Dade County, and

recorded in official records book 182, at page 667 of the public records of Dade County, is valid and constitutional. The court fails to find that the charter provisions challenged by plaintiff are anywise in derogation of, in conflict with, or transcend any provisions of the Dade County Home Rule Amendment to the Florida constitution, or that the charter provisions are repugnant or inconsistent with each other insofar as they impose any limitations upon the exercise by municipalities of the powers and functions granted by their respective municipal charters, or otherwise. Each municipality in Dade County has full power and authority to exercise all powers, duties and functions granted to it by its present municipal charter, or under such new or amended charter as it may adopt from time to time, relating to the affairs, property and government of each municipality. This power is subject, however, to all county ordinances lawfully enacted by the county commission under and pursuant to the charter of Dade County relating to the affairs, property and government of the entire county. The charter of Dade County and county ordinances adopted thereunder shall in cases of conflict supersede all municipal charters and city ordinances, except in those instances where the charter of Dade County specifically provides otherwise. The court finds and declares that ordinance no. 57-12, known as "The Traffic Ordinance of Dade County, Florida", and sometimes referred to as "The Metropolitan Traffic Code", and ordinance no. 57-13 relating to the Metropolitan Court of Dade County, are valid and constitutional, and in full force and effect throughout all of Dade County and applicable in the unincorporated and incorporated areas of the county; and in cases of conflict such ordinances supersede and repeal all conflicting municipal ordinances, rules and regulations.

The court finds and declares that section 1.01 A (18) of the charter (authorizing the county commission to set minimum standards for all municipalities) imposes no limitation or restriction upon the county commission in the exercise of any of the powers enumerated in section 1.01 of the charter. The county commission is vested with valid and lawful authority to exercise all powers vested in it by the Home Rule Charter to carry on a central metropolitan government within the territorial area of Dade County. The county commission, in the exercise of these powers, is not precluded from conflicting with, superseding, infringing upon, repealing or invalidating municipal ordinances, resolutions or laws, except as the exercise of such powers is expressly limited, restricted, curtailed or prohibited by the constitution, the charter, or by general law.

Accordingly, it is ordered, adjudged and decreed —

That Dade County ordinance no 57-12, adopting a master plan for the control of traffic, establishing regulations and setting penalties for violations thereof, known as "The Traffic Ordinance of Dade County, Florida", sometimes referred to as the "Metropolitan Traffic Code", was lawfully enacted under and pursuant to, and in accordance with, the Home Rule Charter of government for Dade County, and is applicable in all the unincorporated and incorporated areas of Dade County and supersedes and nullifies all municipal traffic ordinances, resolutions, and codes of the several municipalities in Dade County.

That Dade County ordinance no. 57-13, establishing the Metropolitan Court of Dade County and vesting it with exclusive original jurisdiction to try all cases for violations of the Traffic Ordinance of Dade County, also known as the Metropolitan Traffic Code (ordinance no. 57-12), was lawfully enacted under and pursuant to, and in accordance with, the Home Rule Charter and supersedes and nullifies all municipal charters and ordinances in conflict therewith.

That Miami Shores Village ordinance no. 277 adopted June 4, 1957 (known as the Traffic Ordinance of Miami Shores Village), has been superseded and nullified by the Metropolitan Traffic Code, and ordinance no. 277 is invalid and of no lawful force and effect.

That Miami Shores Village, and its agents, servants, employees, representatives, officials and appointees, are hereby permanently enjoined and restrained from further enforcing the Traffic Ordinance of Miami Shores Village (ordinance no. 277), and the Village Municipal Court and the several judges thereof are hereby permanently enjoined and restrained from trying any further traffic cases involving violations of ordinance no. 277; provided, however, that this prohibition shall not be applicable to any pending cases for traffic offenses occurring prior to the date of rendition of this decree, nor shall this decree be construed to impose any restraint or limitation upon the right, power and jurisdiction of such municipal court to try cases involving violations of any municipal ordinances relating to matters other than traffic offenses.

That Miami Shores Village is hereby mandatorially enjoined and required to conform to, observe, abide by, and enforce the Metropolitan Traffic Code (ordinance no. 57-12) within the territorial area of Miami Shores Village.