336 So.2d 556 (1976)
ASKEW, Reubin O'd., et al., Appellants,
v.
GAME and FRESH WATER FISH COMMISSION of the State of Florida, Etc., et al., Appellees.
No. 46583.
Supreme Court of Florida.
April 21, 1976.
Rehearing Denied June 11, 1976.
Robert L. Shevin, Atty. Gen., and Charles R. Ranson, Asst. Atty. Gen., for appellants.
James F. McKenzie and D.L. Middlebrooks of Levin, Warfield, Middlebrooks, Graff, Mabie, Rosenbloum & Magie, Pensacola, for appellees.
BOYD, Justice.
In this proceeding we are reviewing by direct appeal an order from the Circuit *557 Court of Leon County, Second Judicial Circuit of Florida, which initially and directly passed on the validity of several state statutes and construed a provision of the state Constitution. We have jurisdiction.[1]
The cause arose when The Bream Fisherman's Association sought to enjoin the Department of Natural Resources, State of Florida, from introducing a species of fish, the White Amur, into the waters of Deer Point Lake in Bay County. The Department acted under Sections 372.26,[2] 372.925,[3] Florida Statutes (1973), and Section 372.931, as amended by Chapter 74-65, Laws of Florida,[4] which collectively permit *558 *559 the Department to control aquatic weeds in Florida by means of introducing fish into Florida waters without obtaining a permit from the Game and Fresh Water Fish Commission. The Commission, too, brought suit for a permanent injunction against the Department and the case was consolidated with the Association's case.
As it existed on November 26, 1974,[5] Article IV, Section 9 of the Florida Constitution stated:
"§ 9. Game and fresh water fish commission. There shall be a game and fresh water fish commission, composed of five members appointed by the governor for staggered terms of five years. The commission shall exercise the nonjudicial powers of the state with respect to wild animal life and fresh water aquatic life, except that all license fees for taking wild animal life and fresh water aquatic life and penalties for violating regulations of the commission shall be prescribed by specific statute."
The order of the Circuit Court construed the above constitutional provision to find the following unconstitutional: the exemption sentence of Section 372.26; Section *560 372.925 as it applies to fresh water aquatic life; and Section 372.931 as amended by Chapter 74-65, Laws of Florida, on its face.
We agree with the Circuit Court that, standing alone, the former Article IV, Section 9 of the Florida Constitution would require that the challenged statutes be held unconstitutional. However, there is another provision of the Constitution, not mentioned in the order of the Circuit Court, which must be considered. Article II, Section 7, Florida Constitution, states:
"§ 7. Natural resources and scenic beauty. It shall be the policy of the state to conserve and protect its natural resources and scenic beauty. Adequate provision shall be made by law for the abatement of air and water pollution and of excessive and unnecessary noise."
In construing the Constitution every section should be considered so that the Constitution will be given effect as a harmonious whole. A construction which would leave without effect any part of the Constitution should be rejected. State v. Bryan, 50 Fla. 293, 39 So. 929 (Fla. 1905). Were we to hold the challenged statutes unconstitutional the Legislature would be stripped of its power in many instances to carry out the policy of abatement of water pollution, as embodied in Article II, Section 7. Consequently we construe former Article IV, Section 9 and Article II, Section 7 together to hold the challenged statutes to be constitutional.
The order of the Circuit Court is reversed and the cause remanded for proceedings consistent with this opinion.
It is so ordered.
OVERTON, C.J., and ADKINS, SUNDBERG and HATCHETT, JJ., concur.
ENGLAND, J., concurs in result only.
NOTES
[1] Article V, Section 3(b)(1), Florida Constitution.
[2] Imported fish. No person shall import into the state or place in any of the fresh waters of the state any fresh water fish of any species without having first obtained a permit from the game and fresh water fish commission. This restriction shall not apply to the department of natural resources, acting under authority of § 372.925(4).
[3] Florida aquatic weed control act.

(1) This act shall be known as the Florida aquatic weed control act.
(2) The department of natural resources is vested with the authority to direct the control, eradication, and regulation of noxious aquatic weeds and the research and planning related to said activities, as provided by law, so as to protect human health, safety, and recreation and, to the greatest degree practicable, prevent injury to plant and animal life and property.
(3) It shall be the duty of the department to guide and coordinate the activities of all public bodies, authorities, agencies, and special districts charged with the control or eradication of aquatic weeds and plants. It may delegate all or part of such functions to the division of game and fresh water fish.
(4) The department shall also promote, develop, and support research activities directed toward the more effective and efficient control of aquatic plants. In the furtherance of this purpose, the division is authorized to:
(a) Accept donations and grants of funds and services from both public and private sources;
(b) Contract or enter into agreements with public or private agencies or corporations for research and development of aquatic plant control methods or for the performance of aquatic plant control activities;
(c) Construct, acquire, operate, and maintain facilities and equipment; and
(d) Enter upon, or authorize the entry upon, private property for purposes of making surveys and examinations and to engage in aquatic plant control activities, and such entry shall not be deemed a trespass.
(5) The department of natural resources may disburse funds to any special district or other local authority charged with the responsibility of controlling or eradicating aquatic plants, upon:
(a) Receipt of satisfactory proof that such district or authority has sufficient funds on hand to match the estate funds herein referred to on an equal basis;
(b) Approval by the department of the control techniques to be used by the district or authority; and
(c) Review and approval of the program of the district or authority by the department to be in conformance with the state control plan.
[4] Presently Section 372.932, Florida Statutes (1975) Nonindigenous aquatic plant control. 

(1) This section shall be known as the "Florida nonindigenous aquatic plant control act."
(2) For the purpose of this section, the following words and phrases shall have the following meanings:
(a) "Department" means the department of natural resources.
(b) "Aquatic plant" is any plant growing in, or closely associated with, the aquatic environment and includes "floating", "emersed", "submersed" and "ditch bank" species.
(c) "Nonindigenous aquatic plant" is any aquatic plant that is nonnative to the state of Florida and has certain characteristics, such as massive productivity, choking density, or an obstructive nature, which render it detrimental, obnoxious, or unwanted in a particular location.
(d) A "maintenance program" is a method for the control of nonindigenous aquatic plants in which control techniques are utilized in a coordinated manner on a continuous basis in order to maintain the plant population at the lowest feasible level as determined by the department.
(e) An "eradication program" is a method for the control of nonindigenous aquatic plants in which control techniques are utilized in a coordinated manner in an attempt to kill all the aquatic plants on a permanent basis in a given geographical area.
(f) A "complaint spray program" is a method for the control of nonindigenous aquatic plants in which weeds are allowed to grow unhindered to a given level of undesirability, at which point eradication techniques are applied in an effort to restore the area in question to a relatively low level of infestation.
(g) "Waters" means rivers, streams, lakes, navigable waters and associated tributaries, canals, meandered lakes, enclosed water systems, and any other bodies of water.
(h) "Intercounty waters" means any waters which lie in more than one county or form any part of the boundary between two or more counties, as determined by the department.
(i) "Intracounty waters" means any waters which lie wholly within the boundaries of one county as determined by the department.
(j) "Districts" means the six (6) water management districts created by law and named, respectively, the Northwest Florida Water Management District, the Suwannee River Water Management District, the St. Johns River Water Management District, the Southwest Florida Water Management District, the Central and Southern Florida Flood Control District, and the Ridge and and Lower Gulf Coast Water Management District; and on July 1, 1975, shall mean the five (5) water management districts created by Chapter 73-190, Laws of Florida, and named, respectively, the Northwest Florida Water Management District, the Suwannee River Water Management District, the St. Johns River Water Management District, the Southwest Florida Water Management District, and the South Florida Water Management District.
(3) The Legislature recognizes that the uncontrolled growth of nonindigenous aquatic plants in the waters of Florida poses a variety of environmental, health, safety, and economic problems. The legislature acknowledges the responsibility of the state to cope with the uncontrolled and seemingly never ending growth of nonindigenous aquatic plants in the waters throughout Florida. It is, therefore, the intent of the legislature that the state policy for the control of nonindigenous acquatic plants in waters of state responsibility are to be carried out under the general supervision and control of the department of natural resources, and that the state itself shall be responsible for the control of said plants in all intercounty waters but that control of said plants in intracounty waters be the designated responsibility of the appropriate unit of local or county government, special district, authority, or other public body. It is the intent of the legislature that the control of nonindigenous aquatic plants be carried out primarily by means of maintenance programs, rather than eradication or complaint spray programs, for the purpose of achieving more effective control at a lower long-range cost. It is also the intent of the legislature that the department shall guide, review, approve, and coordinate all nonindigenous aquatic plant control programs within each of the water management districts as defined in subsection (2)(j). It is the intent of the legislature to account for the costs of nonindigenous acquatic plant maintenance programs by watershed for comparison management purposes.
(4) The department of natural resources is vested with the authority to supervise and direct all maintenance programs of control of nonindigenous aquatic plants, as provided by law, so as to protect human health, safety, and recreation and, to the greatest degree practicable, prevent injury to plant, fish, and animal life and property.
(5) Where state funds are involved, or where waters of state responsibility are involved, it shall be the duty of the department to guide, review, approve, and coordinate the activities of all public bodies, authorities, state agencies, units of local or county government, commissions, districts, and special districts engaged in operations to maintain, control, or eradicate nonindigenous aquatic plants. It may delegate all or part of such functions to any appropriate state agency, special district, unit of local or county government, commission, authority, or other public body. However, special attention be given to the keeping of accounting and cost data in order to prepare the annual fiscal report as required in subsection (7).
(6) The department may disburse funds to any district, special district, or other local authority for the purpose of operating a maintenance program for controlling nonindigenous aquatic plants and other noxious aquatic plans in the waters of state responsibility upon:
(a) Receipt of satisfactory proof that such district or authority has sufficient funds on hand to match the state funds, herein referred to on an equal basis;
(b) Approval by the department of the maintenance control techniques to be used by the district or authority; and
(c) Review and approval of the program of the district or authority by the department to be in conformance with the state maintenance control plan.
(7) The department shall submit a fiscal year report on the status of the nonindigenous aquatic plant maintenance program to the president of the senate, the speaker of the house of representatives and the governor and cabinet by January 1 of the following year. This report shall include a statement of the degree of maintenance control achieved by individual nonindigenous aquatic plant species in the intercounty waters of each of the water management districts for the preceding calendar year together with an analysis of the costs of achieving this degree of control. This cost accounting shall include the expenditures by all governmental agencies in the waters of state responsibility. If the level of maintenance control achieved falls short of that which is deemed adequate by the department, then the report shall include an estimate of the additional funding that would have been required to achieve this level of maintenance control. All measures of maintenance program achievement and the related cost shall be presented by water management districts so that comparisons may be made among the water managements districts, as well as with the state as a whole.
(8) The department shall have the authority to cooperate with the United States and to enter into such cooperative agreements or commitments as the department may determine necessary to carry out the maintenance, control, or eradication of water hyacinths, alligator weed, and other noxious aquatic plant growths from the waters of the state and to enter into contracts with the United States obligating the state to indemnify and save harmless the said United States from any and all claims and liability arising out of the initiation and prosecution of any project undertaken under this section. However, any claim or claims required to be paid under this section shall be paid from money appropriated to the nonindigenous aquatic plant control program.
(9) The department may delegate various nonindigenous aquatic plant control and maintenance functions to the game and fresh water fish commission. The commission shall, in accepting commitments to engage in nonindigenous aquatic plant control and maintenance activities, be subject to the rules and regulations of the department. In addition, the commission shall render technical and other assistance to the department in order to carry out most effectively the purposes of § 372.925. However, nothing herein shall diminish or impair the regulatory authority of the commission with respect to the powers granted to it by § 9, Article IV of the state constitution.
(10) The department is hereby directed to use biological agents for the control of nonindigenous aquatic plants.
[5] The date of the Circuit Court's order. On November 5, 1974, by a resolution approved at a General Election, Article IV, Section 9 of the Florida Constitution was amended to take effect in January 1975: § 9. Game and fresh water fish commission. There shall be a game and fresh water fish commission, composed of five members appointed by the governor subject to confirmation by the senate for staggered terms of five years. The commission shall exercise the regulatory and executive powers of the state with respect to wild animal life and fresh water aquatic life, except that all license fees for taking wild animal life and fresh water aquatic life and penalties for violating regulations of the commission shall be prescribed by specific statute. The legislature may enact laws in aid of the commission, not inconsistent with this section. The commission's exercise of executive powers in the area of planning, budgeting, personnel management, and purchasing shall be as provided by law. Revenue derived from such license fees shall be appropriated to the commission by the legislature for the purpose of management, protection and conservation of wild animal life and fresh water aquatic life.