89 So.2d 785 (1956)
R.A. GRAY, as Secretary of State of the State of Florida, and Metropolitan Charter Board, Appellants,
v.
Harold S. GOLDEN and Dade County League of Municipalities, Appellees.
Supreme Court of Florida. En Banc.
September 7, 1956.
Rehearing Denied October 10, 1956.
*786 Richard W. Ervin, Atty. Gen., and Howard S. Bailey, Asst. Atty. Gen., for R.A. Gray, Secretary of State.
Dubbin, Blatt & Schiff, Miami, J. Lewis Hall, Tallahassee, and Paul & Sams, Miami, for appellants.
Leonard Pepper, Tallahassee, for Harold S. Golden.
Anderson & Nadeau and Edward L. Semple, Miami, for Dade County League of Municipalities.
Henry G. Simmonite, Chairman of Legislative Committee of Dade County Bar Ass'n, Miami, amicus curiae.
TERRELL, Justice.
The Legislature of 1955 adopted Joint Resolution 1046, proposing an amendment to Section 11 of Article VIII, Constitution of Florida, providing home rule for Dade County in local affairs. It provided for submission to the electors of the state for ratification or rejection at the general election in November, 1956. This suit was instituted by Harold S. Golden against the Secretary of State in the Circuit Court of Leon County praying for a declaration of his rights under said resolution and that the Secretary of State be enjoined from spending public funds to advertise and submit the proposed amendment to the electorate at the 1956 general election. The Dade County League of Municipalities and Metropolitan Charter Board were permitted to intervene. The Secretary of State and Metropolitan Charter Board moved for summary final decree, which motion was granted and the Secretary of State was enjoined from advertising or submitting the proposed amendment to the people at the November, 1956, general election. This appeal is from the summary final decree.

Statement.
At the outset appellants direct our attention to the following pertinent facts as a premise for their contention: That Dade is the most populous county in the state; that Miami in said county is the largest city in the state; that there are twenty-six municipalities in Dade County; that said county is a great railroad, manufacturing and commercial center; that it has one of the great harbors of the nation; that the airborne freight and passenger traffic originating in and passing through Dade County is national and international in scope, and that said factors constitute Dade County one of the great metropolitan areas of the world.
Our attention is also called to the fact that the present plan for county and municipal government defined in the Constitution is virtually the same as that originally embodied in the Constitution in 1885; that it is the product of an agrarian economy, geared to the needs of county and municipal government of a century ago. It is contended that such a plan of county and municipal government is inadequate to cope with the problems that constantly arise in a great and diversified modern metropolitan area. It is pointed out that in many instances the boundaries of municipalities in Dade County have long since lost any reasonable relationship to the political and economic life of the majority of the people and that such boundaries are now a relic of the bygone era that preceded the industrial growth and development of the county.
Our attention is further directed to the fact that few, if any, municipalities in Dade County are composed of a cohesive, homogeneous population since practically all of them are interdependent in many ways; that there are thousands of people in Dade County who live in one municipality, have employment, offices, positions or working places in another, shop or trade in another and whose children attend school in still another. The density of population, common transportation and communication facilities, the mutual dependence on public utilities, the unified economy of the county, the common problem of drainage, transportation, communication, *787 water supply, sewage, garbage collection and disposal, fire protection, zoning and planning for future development, demonstrate that municipal boundary lines are little more than artificial barriers that are outmoded by present needs and conditions. In order to deal more effectively with the problems arising from these conditions, to provide a unified, efficient plan of government, readily responsive to popular will, at the same time subject to the general lawmaking power of the legislature in matters of statewide interest and policy, the proposed amendment was adopted by the legislature and submitted to the people for ratification or rejection.

Opinion.
It is first contended that the chancellor committed error in holding that the proposed amendment violates Section 1, Article XVII, Constitution of Florida, F.S.A. in that it attempts to revise more than one article of the Constitution. Section 1, Article XVII, is as follows:
"Method of Amending Constitution. ____ Either branch of the Legislature, at any regular session, or at any special or extraordinary session thereof * * *, may propose the revision or amendment of any portion or portions of this Constitution. Any such revision or amendment may relate to one subject or any number of subjects, but no amendment shall consist of more than one revised article of the Constitution."
The answer to this question turns on the interpretation of the last sentence in the quoted section of Article XVII. We are concerned here with an "amendment" to a single section of the Constitution, Section 11, Article VIII. Such "amendment may relate to one subject or any number of subjects," but it "shall [not] consist of more than one revised article of the Constitution." The proposed amendment is certainly limited to a single "subject." The "subject" and the "revised article" are comprehended in the following pronouncement: "It is declared to be the intent of the Legislature and of the electors of the State of Florida to provide by this section home rule for the people of Dade County in local affairs." In other words, "home rule for the people of Dade County in local affairs," is all the proposed amendment attempts to provide for. The chancellor construed "revised article" to mean that no amendment of a single article of the Constitution can limit, restrict or modify the provisions of any other article of the Constitution.
By way of illustration, says the chancellor, the proposed amendment says that the home rule charter may vest authority in the board of county commissioners to pass ordinances relating to the affairs, property and government of Dade County and provide suitable penalties for the violation of such ordinances. It was the chancellor's view that this provision was in effect a revision of Section 1, Article III of the Constitution relating to the lawmaking powers of the legislature.
A second illustration  under the proposed amendment, the home rule charter may create courts with exclusive original jurisdiction to try all offenses against ordinances passed by the board of county commissioners. It was the chancellor's view that this provision was in effect a revision of Article V of the Constitution relating to the judicial department, despite the fact that the proposed amendment expressly provides that the jurisdiction of the circuit court shall not be impaired, nor shall any court established by the Constitution or by general law, nor the judges or clerks thereof be abolished.
A third illustration  under the proposed amendment, the charter "May * * abolish and may provide a method for * * * abolishing * * * all * * boards, or other governmental units whose jurisdiction lies wholly within Dade County * * *." It was the chancellor's view that this provision was in legal effect a *788 revision of a large part of Article XV relating to public health and conferred power to abolish county boards of health provided for in Article XV, despite the fact that paragraph (g) of the proposed amendment expressly provides that the home rule charter cannot limit or restrict the power and jurisdiction of any state agency, bureau or commission now or hereafter provided by the Constitution or by general law, and said state agencies, bureaus and commissions shall have the same powers in Dade County as shall be conferred upon them in regard to other counties.
Other provisions might be lifted from the final decree to illustrate the chancellor's holding that a proposed amendment to the Constitution cannot limit, restrict or modify the provisions of any other article of the Constitution.
I find no authority in Section 1, Article XVII of the Constitution for such a limitation on the term "revised article" as used in the last sentence of Section 1. As pointed out, we are concerned here with an amendment to Section 11, Article VIII of the Constitution. It concerns a single subject  "home rule for the people of Dade County in local affairs." It does not propose to be a "revised article" but a revised section. Conceding for the sake of argument that it be a "revised article," the limitation imposed by the chancellor would not apply because it is limited to the single subject and may encompass enough to accomplish that subject even though it affects other provisions of the Constitution to that extent, otherwise it would not be possible to amend any provision of the Constitution. An examination of the various articles of the State and Federal Constitutions will disclose that many particular ones will limit others in order to accomplish the single purpose for which they were designed.
The "Statement" in the forepart of the opinion, better than anything else specifies the reason for the proposed amendment. It cannot be questioned that it is an experiment in democratic government, but it is not for this court to say that the people of Dade County cannot undertake such an experiment when legally submitted and approved. An examination of the provisions of the proposed amendment as a whole shows that there was no intent or purpose to transgress or repeal any provision of the Constitution or any state laws of general application. It is true that the proposed amendment limits or modifies as to Dade County provision in other articles of the Constitution but only to the extent defined in the amendment. Such limitations are in harmony with constitutional amendments generally and except as to the "purpose" of the amendment, the parent provision continues in force. People ex rel. Elder v. Sours, 31 Colo. 369, 74 P. 167, 102 Am.St.Rep. 34, deals with the point. In this holding I do not overlook Parsons v. People, 32 Colo. 221, 76 P. 666, in which it is contended that the Sours case was modified but we do not think it changes the picture. See also City of Coral Gables v. Gray, 154 Fla. 881, 19 So.2d 318, wherein it is pointed out that in order to constitute more than one amendment the proposition submitted must not only relate to more than one subject but must also have at least two separate and distinct purposes not dependent upon or connected with each other. Section 1, Article XVII, in terms provides that the "amendment may relate to one subject or any number of subjects." It affirmatively appears that the purpose of the proposed amendment was not only to provide local self-government to the people of Dade County with the board of county commissioners as the governing body, but to preserve the supremacy of the legislature in all matters of state interest as expressed in the Constitution and the general law.
In the City of Coral Gables v. Gray, supra, we took pains to relate that even though a proposed amendment may be separable into two or more propositions concerning the value of which diversity *789 of opinion may arise, that alone is not sufficient to condemn it; provided, the propositions may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant purpose. Unity of purpose as revealed in the object sought by the amendment is the test; the details leading to it are not material. If several propositions that are unrelated are submitted as one and cannot be reconciled as such on any reasonable thesis, then they meet the condemnation of the constitutional mandate. We have no such situation here, local self-government for Dade County is the only concern of the proposed amendment.
Subsection (i) of the proposed amendment removes any doubt as to this interpretation. It is as follows:
"It is declared to be the intent of the Legislature and of the electors of the State of Florida to provide by this section home rule for the people of Dade County in local affairs and this section shall be liberally construed to carry out such purpose, and it is further declared to be the intent of the Legislature and of the electors of the State of Florida that the provisions of this Constitution and general laws which shall relate to Dade County and any other one or more counties of the State of Florida or to any municipality in Dade County and any other one or more municipalities of the State of Florida enacted pursuant thereto by the Legislature shall be the supreme law in Dade County, Florida, except as expressly provided herein and this section shall be strictly construed to maintain such supremacy of this Constitution and of the Legislature in the enactment of general laws pursuant to this Constitution."
I take this to be an express direction for the interpretation of the proposed amendment and related provisions of the Constitution and statutes in order that the purpose of said proposed amendment be accomplished. To do this we are forced to the conclusion that the applicable provisions of the Constitution and the statutes must be construed as a whole; they should not be construed in isolation. This is nothing new in constitutional interpretation. We are often put to the necessity of interpreting both constitutional and statutory provisions with an eye to their relation to other provisions. It is true that the legislature may not legally submit an amendment of more than one "revised article," but here we are dealing with a proposed amendment with a single purpose and in so doing the legislature may legally propose it so as to limit or modify other provisions than the one proposed to be amended. Any other procedure would in effect nullify the power of the people to amend the Constitution.
The second controversy presented is whether or not in the light of its purpose and objectives and the applicable rules of interpretation, the proposed amendment presents a valid, logical, consistent and comprehensive plan for local self-government of Dade County. This question could have as well been comprehended in the first question argued.
The chancellor found "that the contents of Senate Joint Resolution 1046 are so inconsistent, conflicting and contradictory that it fails to constitute a proposal of an amendment to the Constitution within the contemplation of Section 1, Article XVII of the Constitution." Hence it should "not be included on the official ballot at the 1956 general election."
We do not controvert the fact that when read in isolation provisions of the proposed amendment may appear conflicting and contradictory but when read in relation to other pertinent provisions, there is ample reason to dissolve the alleged conflicts. As we have pointed out, we think the proposed amendment must be read in connection with the rules of interpretation alluded to as well as its qualifying provisions. In this *790 connection, it is important to point out that the proposed amendment if adopted is not the governing charter under which home rule in Dade County will be conducted. It provides for the creation by the legislature of a Metropolitan Charter Board to prepare the home rule charter. The home rule charter must be patterned generally on the proposed amendment and approved by the people before it is effective. It will then be the law under which home rule in Dade County will be conducted. If it transcends the proposed amendment or fails in other respects to provide a workable plan for home rule, it will then be subject to assault by any one unlawfully affected.
We do not overlook the fact that the proposed amendment must comform to the requirements of Section 1, Article XVII, of the Constitution as a prerequisite to adoption by the legislature and submission to the people. This provision is mandatory but what we have said shows that the requirements of Section 1, Article XVII, have been met. The chancellor found that the proposed amendment in no way violated the Constitution of the United States and that it was submitted to the people as required by the mechanics of the State Constitution. His objection to it was grounded on inconsistent, contradictory and conflicting provisions. Since these facts are admitted, we could rest the case at this point. Such showing clears the proposed amendment for submission to the people. If they reject it, that will be the end of it, but if they approve it, provision for preparation of the home rule charter follows. We may assume that it will be prepared as required by the proposed amendment but, if it is not, then will be the time to raise such points as the chancellor in the main based his decree on, including others.
In his final decree the chancellor took account of the top purpose of the proposed amendment and admitted that such purpose had been effected in other states but he found that account of contradictions and inconsistencies no such interpretation could be placed on the proposed amendment. We have already alluded to the place of paragraph (i) of the proposed amendment. In our view, paragraphs (e), (f) and (g) of the proposed amendment, if considered with paragraph (i) and balanced against the provisions which appear inconsistent, would iron out the major portion of the challenged inconsistencies. These paragraphs emphasize the supremacy of the legislature in lawmaking power, insure the paramount authority of the state, the jurisdiction of state agencies, bureaus and commissions in Dade County and withal declare the purpose of the proposed amendment is to grant home rule in local affairs only and to preserve the supremacy of the Constitution and general laws relating to counties, except as expressly set forth in the proposed amendment. We must assume that when the Metropolitan Charter is prepared and approved it will safeguard these precepts.
Another thing we should keep in mind is that we are dealing with a constitutional democracy in which sovereignty resides in the people. It is their Constitution that we are construing. They have a right to change, abrogate or modify it in any manner they see fit so long as they keep within the confines of the Federal Constitution. The legislature which approved and submitted the proposed amendment took the same oath to protect and defend the Constitution that we did and our first duty is to uphold their action if there is any reasonable theory under which it can be done. This is the first rule we are required to observe when considering acts of the legislature and it is even more impelling when considering a proposed constitutional amendment which goes to the people for their approval or disapproval. Changes in government such as proposed here are provoked in the interest of economy and efficiency, they necessarily contemplate the abolition of some offices, boards and agencies and the combination of others, but this is well within the power of the electorate.
Appellants remind us that the proposed amendment logically separates into two major *791 divisions: the first, home rule in local affairs for the people of Dade County; second, maintain the status of Dade County as an integral subdivision of the state, subject and subordinate to the general lawmaking power of the legislature. Appellant further suggests that bearing these two objectives in mind paragraphs (e), (f) and (g) should be construed together as the complete expression of the legislature relative to the relationship of Dade County to the state and the other counties of the state. If paragraphs (e) and (f) are read together, they show conclusively that the legislature intended to preserve the effect of existing general laws and its lawmaking power in relation to Dade County, except as to those matters expressly authorized in the proposed amendment.
Summarized the things authorized to be included in the home rule charter are: (1) board of county commissioners to be the governing authority of the county; (2) fix boundaries of county commissioner districts, the method of changing them, their number, term of office, compensation and method of election; (3) grant power to county commissioners to pass ordinances relating to Dade County affairs, property and government; (4) change boundaries of, merge, consolidate and abolish municipalities, county and district governments, tax districts, authorities, boards or other agencies whose jurisdiction lies wholly in Dade County; (5) provide for transferring municipal functions to county commissioners; (6) provide for establishing new municipalities, tax districts and other governmental units and prescribe their jurisdictions; (7) abolish county offices provided by Article XIII of the Constitution except the office of county superintendent of public instruction but shall provide for carrying on the offices so abolished and to establish courts with jurisdiction to try offenses against ordinances passed by the county commissioners; (8) provide for municipalities to amend charters; (9) change name of Dade County; (10) provide for recall of county commissioners, for initiative and referendum on ordinances and home rule charter.
In all other matters the Constitution and general laws control. In addition to provisions to preserve supremacy of the general lawmaking power of the legislature and jurisdiction of state agencies, bureaus and commissions in Dade County, there are other provisions designed to protect state sovereignty, preserve supremacy of the general lawmaking power of the legislature and protect the jurisdiction of state agencies. They are (1) jurisdiction of circuit court preserved; (2) no court provided by general law or the Constitution, nor the judges or clerks thereof shall be abolished; (3) the power of suspension or removal by the governor and the senate shall apply to all officers under home rule charter; (4) creditors of governmental units merged, consolidated or abolished shall be fully protected; (5) the office of county superintendent of public instruction preserved; (6) the jurisdiction of all state boards, bureaus and commissions shall not be impaired.
It thus appears that the home rule charter contemplates and deals only with local matters and the proposed amendment preserves the status of Dade County in state matters as a political subdivision of the state, subject to the general law of the state. Nothing whatever is contained in the proposed amendment dealing with public funds, roads, parks, rights-of-way, and dozens of other matters common to state and county purpose. Paragraphs (e), (f) and (g) should be construed as limitations on the home rule charter contemplated by the proposed amendment and should not be isolated and construed separately in relation to other provisions of the charter.
To prepare a home rule charter to combine county and municipal functions and prepare for their government as contemplated by the proposed amendment will be a tedious and difficult undertaking; it will require wisdom and statesmanship of a high order but it is by no means impossible. Properly construed we think the proposed *792 amendment defines a comprehensive plan for home rule in Dade County; we think its apparent conflicts may be reconciled within the confines of the proposed amendment. We think that is in reality all we are concerned with at the present. In preparation of the home rule charter, if the proposed amendment is approved, we think the means are ample to correct any alleged errors, deficiencies or inconsistencies that are mischievous or that may be shown to disrupt or detract from the paramount authority of the state.
The decree appealed from is accordingly reversed and the injunction against the Secretary of State is dissolved. The parties are allowed until 5:00 p.m., Tuesday, September 11, 1956, to file petition for rehearing, if they desire.
Reversed with directions.
DREW, C.J., and THOMAS, HOBSON, ROBERTS, THORNAL and O'CONNELL, JJ., concur.