99 So.2d 856 (1957)
DADE COUNTY, Florida, Faris N. Cowart, Charles F. Hall, Edwin L. Mason, John B. McLeod and Ralph A. Fossey, as the Board of County Commissioners of Dade County, Florida, O.W. Campbell, as County Manager of Dade County, Florida, and Daniel P. Sullivan, as Public Safety Director of Dade County, Florida, Petitioners,
v.
Thomas J. KELLY, as Sheriff of Dade County, Florida, Respondent.
Supreme Court of Florida.
December 20, 1957.
Rehearing Denied February 5, 1958.
Darrey A. Davis and Marion E. Sibley, Miami Beach, for appellants.
Milton M. Ferrell and J.M. Flowers, Miami, for appellee.
HOBSON, Justice.
This is a direct appeal taken from the circuit court under Article V, Section 4, of the Florida Constitution, F.S.A., and Rule 2.1(5a) of the Florida Appellate Rules. Appellants are Dade County and its Board of County Commissioners, its County Manager, *857 and its Public Safety Director. Appellee is the Sheriff of Dade County.
The "Dade County Home Rule Amendment" to the Florida Constitution, which we considered in Gray v. Golden, Fla., 89 So.2d 785, was adopted November 6, 1956. This amendment to Article VIII, Section 11, provides in part as follows:
"Section 11(a). The electors of Dade County, Florida, are granted power to adopt, revise, and amend from time to time a home rule charter of government for Dade County, Florida, under which the Board of County Commissioners of Dade County shall be the governing body. This charter:
* * * * * *
"(vi) May abolish and may provide a method for abolishing from time to time all offices provided for by Article VIII, Section 6, of the Constitution[*] or by the Legislature * * * and may provide for the consolidation and transfer of the functions of such offices * * * provided further that if said home rule charter shall abolish any county office or offices as authorized herein, that said charter shall contain adequate provision for the carrying on of all functions of said office or offices as are now or may hereafter be prescribed by general law."
Pursuant to the constitutional amendment, a "Home Rule Charter" was adopted. This charter provided in part as follows:
"Board of County Commissioners
"Section 1.01. Powers.
"A. The Board of County Commissioners shall be the legislative and the governing body of the county and shall have the power to carry on a central metropolitan government. This power shall include but shall not be restricted to the power to:
* * * * * *
"19. By ordinance, abolish or consolidate the offices of Sheriff, Constables, or any county office created by the Legislature, or provide for the consolidation and transfer of any of the functions of such officers * * *"
Acting under the charter, the Board of County Commissioners of Dade County caused to be enacted Ordinance No. 57-3, creating and establishing the Public Safety Department of Dade County. This ordinance transferred to the Public Safety Department the duties, functions and powers of the County Police and County Fire Departments, and all functions of the Sheriff of Dade County except the service of civil process. At the time this ordinance was enacted the appellee, Kelly, was serving as Sheriff of Dade County pursuant to Article VIII, Section 6, of the Florida Constitution, performing the duties of such office prescribed by law. The relevant section of Ordinance No. 57-3 reads as follows:
"Section 6.16 Sheriff. Each of the functions and duties to be exercised by the public safety department or the public safety director as hereinabove set forth which have been performed, exercised or discharged in the enforcement of the criminal laws of the state or in the maintenance of law and order by the Sheriff of Dade County are hereby transferred from the sheriff and his department to the public safety director and the public safety department. The public safety department and the public safety director shall be responsible for the enforcement of all the criminal laws of the state and shall comply with and enforce all executive orders, directives and lawful requests made by the governor of the state or by state agencies, as such orders, directives and requests have been performed heretofore by the sheriff of Dade County. The public *858 safety department and the public safety director shall perform all the duties and functions of the office of sheriff required under the Constitution and general laws not reserved herein to the sheriff of Dade County. The sheriff shall exercise only those functions which deal with the service of civil process. All departments, personnel and records and equipment now under the sheriff's department pertaining to the functions to be performed by the public safety department and the public safety director as above set forth are hereby transferred to the public safety department and under the supervision of the public safety director."
On September 3, 1957, appellee, as Sheriff, filed his complaint seeking a declaratory decree determining that Ordinance No. 57-3 and the controlling provisions of the Home Rule Charter, insofar as they applied to his office, were void, and praying for injunctive relief against the transfer of the functions of his office to the Public Safety Department. The complaint alleged that the attempted transfer of the Sheriff's functions to the Public Safety Department was void because:
"(a) The power to perform said acts was not granted to the electors of Dade County, Florida, by said constitutional amendment.
"(b) Assuming but not admitting, that the power to perform said acts was granted said electors of Dade County, Florida, then the said acts constitute the exercise of a constitutional power granted said electors which cannot lawfully be delegated by them to the Defendant, said Board.
"(c) The constitutional power to perform said acts was not lawfully delegated by said electors to said Defendant, Board, assuming but not admitting that said electors had said constitutional power and that said constitutional power could be lawfully delegated."
After a motion to dismiss and answer were filed and the cause was set for hearing on the injunction, it was agreed by counsel for the respective parties that no issues of fact were involved, but that hearing should be had upon the complaint, motion to dismiss and answer. After hearing, the chancellor entered a temporary injunction prohibiting the Public Safety Director from performing or attempting to perform any of the functions of the Sheriff of Dade County and restraining each of the defendants from interfering with the Sheriff in the performance of his duties as prescribed by law prior to the adoption of the Home Rule Charter.
Appellants contend that the ruling of the chancellor was in error and that the transfer of the Sheriff's powers, duties and functions except for service of process was accomplished in accordance with law.
We first focus our attention upon the quoted portions of the Constitution and the quoted parts of the charter enacted pursuant thereto. In Gray v. Golden, supra, 89 So.2d 785, 790, we said, in an opinion by Mr. Chief Justice Terrell:
"The home rule charter must be patterned generally on the proposed amendment and approved by the people before it is effective. It will then be the law under which home rule in Dade County will be conducted. If it transcends the proposed amendment or fails in other respects to provide a workable plan for home rule, it will then be subject to assault by any one unlawfully affected." (Emphasis supplied.)
A study of the quoted constitutional provision discloses that it was made permissible, by charter, to abolish and provide a method for abolishing from time to time certain constitutional county offices and to provide for the consolidation and *859 transfer of the functions of such offices. In the event of abolition of an office, the charter was to contain adequate provision for carrying on its functions. The exact language of the constitutional amendment is conspicuous for its use of the conjunctive rather than the disjunctive and to us, according to its plain terms, it contemplates that before the functions of an office are transferred, or are consolidated with the functions of some other office, the old office must be abolished. As a matter of common usage, "the functions" means all of the functions. We cannot read into this language a disposition to authorize or to permit the erosion of an existing office by removing some of its functions and leaving others in existence, or the disembowelling of an office, such as we have here, without administration of the coup de grace. We said in Gray v. Golden, supra:
"Changes in government such as proposed here are provoked in the interest of economy and efficiency, they necessarily contemplate the abolition of some offices, boards and agencies and the combination of others, but this is well within the power of the electorate."
In the same case, when we summarized the things authorized to be included in the home rule charter, we interpreted Article VIII, Section 11(a) (vi) to provide for the abolition of an office and the transfer of its functions. Since two of the primary considerations in the whole home rule idea for Dade County were "economy and efficiency", we cannot conceive it to have been intended that the shell of an old office would remain while less than all of its functions were transferred to a new office. Appellants contend that the whole office of Sheriff is a "patchwork". It appears that the action which has been taken, and which was challenged below, has merely resulted in another patch.
Turning to examine Section 1.01 A. 19 of the charter, under which the ordinance was enacted, we notice the frequent use of the disjunctive. The Board is given several choices. First, it may, by ordinance, abolish a county office. The constitution provides that the charter may abolish an office. Since we are not concerned with the abolition of an office by charter, the authority of the Board to abolish an office must rely, as appellants contend that it does, upon the words "provide a method for abolishing". The method is "by ordinance" and this, we believe, satisfies the constitutional requirement so far as method is concerned. But, since, as we have held, the abolition of a county office is a condition precedent to the transfer of its functions, it follows that the authority purported to be granted to the Board of County Commissioners of Dade County to "transfer [any] of the functions of such officers", i.e., to make a piecemeal transfer, while the office is still in existence, "transcends the amendment" within the meaning of Gray v. Golden, supra, and must be declared void and of no effect.
Nothing herein shall be construed to prevent the Commissioners from establishing an effective date at which time the abolition of the old office will become effective and the transfer of "the functions" of such office will become effective. To that end and for that purpose the Commissioners may, in advance of the effective date of abolition, adopt ordinances for the orderly transfer of the functions to become effective at the time of the abolition. Such is obviously necessary to prevent a hiatus or void between the abolition of the old and the effective date of the new.
The order appealed from is affirmed, but without prejudice to appellants to enact an ordinance, if so advised, abolishing the office of Sheriff and transferring all of the functions thereof.
THOMAS and O'CONNELL, JJ., and WIGGINTON, District Judge, concur.
*860 TERRELL, C.J., and THORNAL, J., concur in part and dissent in part.
THORNAL, Justice (concurring in part and dissenting in part).
I am in complete accord with the views of the majority on the two fundamental propositions which hold:
(1) The people of Dade County have the power to delegate to the Board of County Commissioners the authority to abolish the office of sheriff.
(2) Under the charter as now adopted the County Commissioners have the authority to abolish the office of sheriff and transfer all of the functions thereof to the office of the Director of Public Safety if they deem it wise to do so.
The difference between us simply is that I would go further and hold that in the exercise of this power to transfer the functions of an office neither the people nor their elected representatives are compelled by the Constitution to transfer or consolidate all of the functions of any particular office at any one time if in their wisdom an orderly transition from the old to the new requires a more cautious and less drastic approach. This view of the matter leads me to an immediate and unequivocal reversal of the final decree under assault.
Fundamental to a democracy and in the explicit language of our Constitution "all political power is inherent in the people". F.S.A.Const. Declaration of Rights, § 2. The electorate is not the recipient of power from a higher authority. It is the great reservoir of all political power.
As I interpret the objectives implicit in the Dade County Home Rule Amendment it was intended to supply the people of the affected area with a vehicle by which they could transport themselves into happier climes of more effective, more efficient and more serviceable government. With this view I understand the majority to be in thorough accord. The only difference between us simply is that the majority holds that in accomplishing the desirable result it is a condition precedent that a particular existing office must be completely abolished or its complete abolition provided for and all of its total functions transferred simultaneously with abolition. In other words, it seems to be their view that no single, solitary part of the functions of an existing office can be transferred to a newly created office unless the existing office is totally abolished and its entire functions transferred.
I would construe the Amendment to allow the people of Dade County and their elected governing board more flexibility and a broader opportunity for experimentation within the outer limits of the organic law. It seems to me that if they deem it advisable to retain for a time an existing office but feel that some of the functions of that office should be transferred to a newly created agency in the interest of efficiency or whatever the reason might be, the spirit and purpose as well as the letter of the Home Rule Amendment contemplates that they should be permitted to do so. This view I believe to be more nearly consonant with the clear-cut directive of the Home Rule Amendment that it be liberally construed to provide "home rule for the people of Dade County in the local affairs." Article 8, Sec. 11(i).
Under Section 11(a) of the Home Rule Amendment the Board of County Commissioners elected by the people "shall be the governing body." Under Section 11(a) (ii) the electors of the county are empowered to adopt a charter which "may grant full power and authority to the Board of County Commissioners * * * to do everything necessary to carry on a central metropolitan government in Dade County." Under Section 11(a) (VI) the charter "may provide a method for abolishing from time to time" various offices "and may provide for the transfer of the functions of such *861 offices * * *" Construing the last quoted provisions and applying them in the spirit and purpose for which they were intended it would appear to me that since the "governing body" has been granted the power "to do everything necessary to carry on a central metropolitan government," and, since that "governing body" with such broad power is further authorized to abolish "from time to time" various offices, and, further since the same governing body is specifically authorized to provide for the "transfer of the functions of such offices," then I can envision no sound reason why the governing agency when acting pursuant to charter powers granted by the people should be deprived of the authority to exercise a broad discretion in the matter of the offices to be abolished as well as the extent of the functions to be transferred in any particular instance. This appears to me to be within the true spirit of home rule.
In other words, if they have the power to transfer all of the functions of an office, I view it as a strict rather than a liberal interpretation of the Amendment to hold that they should be deprived of the discretion to transfer a part of such functions in any particular instance.
Inasmuch as my view therefore leads me to the notion that the aspects of the present charter under consideration were well within the power of the people to adopt and further that the aspects of the ordinance adopted by the Board of County Commissioners creating the office of Director of Public Safety and transferring to it many of the functions of the office of sheriff were all well within the organic power of the people to authorize and the County Commissioners to enact, I feel that the decree enjoining the enforcement of the ordinance should be reversed and the ordinance reinstated.
With abounding respect for the judgment of the majority, I therefore concur in part and dissent in part.
TERRELL, C.J., concurs.
NOTES
[*] The office of Sheriff is provided for by Article VIII, Section 6 of the Constitution.